# EXHIBIT 2

May 19, 2017

# Preliminary Expert Report of Jeffrey A. Compton
# Compton & Wendler, P.C.

Cause No. 16-cv-526; *Core Laboratories LP f/k/a Core Laboratories, Inc.; and Saybolt LP, Plaintiffs v. AmSpec, LLC; Bobby Davenport; Hugh Freeman; and Travis Stair, Defendants v. Christopher Bartlett, Third-party Defendant*; In the United States District Court, Southern District of Alabama, Southern Division

## Introduction and Qualifications

I have been a Certified Public Accountant in Houston, Texas since 1980 and graduated from Rice University in 1977 with BA degrees in Economics and English. I worked as a financial analyst for petroleum refining and natural gas companies until 1982, when I began to practice public accounting. The emphases of my public accounting services have been accounting and trustee work in bankruptcy, calculation of economic losses in litigation, and the investigation of suspected fraud. I also identify and value assets and liabilities on a regular basis. In addition to being a CPA, I am also Accredited in Business Valuation by the American Institute of Certified Public Accountants and hold the designation of Certified Fraud Examiner. I am employed as president of Compton & Wendler, A Professional Corporation, a Texas licensed, peer-reviewed public accounting firm.

## Assignment

Determine the economic losses to the Plaintiffs arising from the actions of the Defendants in this case.

## Opinions

A. My assessment of the Plaintiffs' economic losses is preliminary as discovery is ongoing. Based on the information reviewed to date, Plaintiffs have lost profits of $1,286,080 if their mitigation efforts are successful. I may supplement this preliminary opinion as additional information becomes available.

B. Alternatively, the lost profits are $1,276,750 if the office were hypothetically closed as of June 1, 2017.[1] I may supplement this preliminary opinion as additional information becomes available.

---

[1] I understand there are no plans to close the Saraland office. This calculation is offered as corroboration for my other opinion.

Confidential

EXHIBIT
2
7-20-17 Compton
PENGAD 800-631-6989

## Bases for Opinions

### *Background*

1. Core Laboratories N.V. is a leading provider of proprietary and patented reservoir description, production enhancement and reservoir management services to the oil and gas industry.[2] Core Laboratories LP ("Core Lab") is a U.S. subsidiary of Core Laboratories N.V.[3]

2. Core Laboratories N.V.'s fluids business focuses on crude oil and its derived products and operates under the trade name Saybolt.[4]

3. Saybolt LP ("Saybolt"), also a U.S. subsidiary of Core Laboratories N.V.,[5] provides inspection, monitoring and testing services to the oil and gas industry.[6]

4. Saybolt has provided testing and inspections services in the Mobile, Alabama area for many years.[7] It has a facility located in Saraland, Alabama ("Saraland Location"), which is a suburb of Mobile, Alabama.[8] Saybolt's revenue for its Saraland Location is summarized in the table below.[9]

| Year | Revenue |
|------|---------|
| 2012 | $   1,832,080 |
| 2013 | $   1,713,950 |
| 2014 | $   2,142,480 |
| 2015 | $   2,104,330 |
| YTD 8/2016 | $   1,498,250 |

5. Saybolt's largest customer at the Saraland Location has been Chevron, which operates a refinery in Pascagoula, Mississippi.[10] As shown in the table below, Chevron has accounted

---

[2] Form 10-K of Core Laboratories N.V. for the Fiscal Year Ended December 31, 2016, page 1
[3] Form 10-K of Core Laboratories N.V. for the Fiscal Year Ended December 31, 2016, page 39
[4] http://www.corelab.com/saybolt
[5] Form 10-K of Core Laboratories N.V. for the Fiscal Year Ended December 31, 2016, page 39
[6] Plaintiffs' Original Complaint, Application for *Ex Parte* Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and Request for Disclosure filed October 7, 2016, paragraph 12
[7] Plaintiffs' Original Complaint, Application for *Ex Parte* Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and Request for Disclosure filed October 7, 2016, paragraph 13
[8] *Ibid.*
[9] SAY01417 - SAY01428
[10] Plaintiffs' Original Complaint, Application for *Ex Parte* Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and Request for Disclosure filed October 7, 2016, paragraph 13

for 42% to 69% of the Saraland Location's revenue.[11, 12]  I understand Saybolt's largest customers other than Chevron at the Saraland Location include Shell and Motiva.[13]

|  | 2012 | 2013 | 2014 | 2015 | Jan-Sep 2016 |
|---|---|---|---|---|---|
| **Sales** | | | | | |
| Chevron | $ 857,247 | $ 1,067,687 | $ 1,474,886 | $ 1,462,885 | $ 1,111,740 |
| Non-Chevron | $ 1,185,051 | $ 844,225 | $ 887,286 | $ 833,853 | $ 502,592 |
| Total | $ 2,042,298 | $ 1,911,911 | $ 2,362,172 | $ 2,296,738 | $ 1,614,332 |
| | | | | | |
| **Percent** | | | | | |
| Chevron | 42.0% | 55.8% | 62.4% | 63.7% | 68.9% |
| Non-Chevron | 58.0% | 44.2% | 37.6% | 36.3% | 31.1% |
| Total | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% |

6.  I am still studying the connection between the Chevron work and the non-Chevron revenue (*i.e.* how much the Chevron work accounts for the non-Chevron revenue).

7.  On September 6, 2016, seven employees at Saybolt's Saraland Location announced their resignation from Saybolt ("Departed Employees").[14]  I understand all seven employees, in addition to Bobby Davenport (a former Business Development Manager who retired from Saybolt in June 2015), joined AmSpec, LLC's ("AmSpec") new Mobile, Alabama location.[15]  While Bobby Davenport was a former employee of Saybolt at the time of the departure as he had retired the prior year, he was still within the two-year non-interference period under his employee agreement with Saybolt, as discussed below in paragraph 12.

---

[11] Per SAY02552 (2012); SAY02553 (2013); SAY02554 (2014); SAY01645 (2015); SAY01648 (Jan-Sep16).  I note differences exist between the total revenues reflected in the aforementioned documents and those reflected in the income statements. I continue to analyze these differences.

[12] For the period of January 2016 through August 2016, Chevron accounted for 70.5% of the Saraland Location's revenue, based upon $1,056,971 invoiced to Chevron (per monthly reports of invoices to Chevron at SAY00106 - SAY00125) relative to $1,498,250 of total revenues (per income statement at SAY01417).

[13] SAY02552 (2012); SAY02553 (2013); SAY02554 (2014); SAY01645 (2015); SAY01648 (Jan-Sep16); SAY01649 (10/1/2016 - 5/16/2017).

[14] Plaintiffs' Original Complaint, Application for *Ex Parte* Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and Request for Disclosure filed October 7, 2016, paragraphs 24, 28

[15] Per AmSpec's Offers of Employment to these individuals located at SAYBOLT (AMSPEC) 001787 - 1788 (Freeman); SAYBOLT (AMSPEC) 001513 - 1514 (Stair); SAYBOLT (AMSPEC) 001588 - 1589 (Lynch); SAYBOLT (AMSPEC) 000899 - 0900 (Perry); SAYBOLT (AMSPEC) 000836 - 0837 (Sellers); SAYBOLT (AMSPEC) 000747 - 0748 (Driskell); SAYBOLT (AMSPEC) 000046 - 0047 (Hoang); SAYBOLT (AMSPEC) 001551 - 1552 (Davenport).

| Employee | Position at Saybolt [A] | Note [A] | | Position Offered at AmSpec [E] |
|---|---|---|---|---|
| Hugh Freeman | Location Manager | | | Branch Manager |
| Travis Stair | Scheduler | [B] | | Operations Coordinator |
| Gary Lynch | Inspector | [C] | | Senior Inspector |
| Patrick Perry | Inspector | [C] | | Inspector |
| Jordan Sellers | Inspector | [C] | | Inspector |
| Jimmy Driskell | Lab Technician | [C] | | Laboratory Manager |
| Keke Hoang | Lab Technician | [C] | | Laboratory Technician |
| Bobby Davenport | Former Business Development Manager | [D] | | Customer Relations Representative |

```
7   Count of Current Employees
1   Count of Former Employees
8
```

**Notes:**

[A] Per Plaintiffs' Original Complaint, Application for Ex Parte Temporary Restraining Order, Temporary Injunction, and
    Permanent Injunction, and Request for Disclosure filed October 7, 2016, paragraphs 22, 24, 28
[B] Dedicated to Chevron work.
[C] Worked full-time on Chevron projects.
[D] Retired in June 2015.
[E] Per SAYBOLT (AMSPEC) 001787 - 1788 (Freeman); SAYBOLT (AMSPEC) 001513 - 1514 (Stair); SAYBOLT (AMSPEC) 001588 - 1589 (Lynch);
    SAYBOLT (AMSPEC) 000899 - 0900 (Perry); SAYBOLT (AMSPEC) 000836 - 0837 (Sellers); SAYBOLT (AMSPEC) 000747 - 0748 (Driskell);
    SAYBOLT (AMSPEC) 000046 - 0047 (Hoang); SAYBOLT (AMSPEC) 001551 - 1552 (Davenport)

8. As a competitor to Saybolt, AmSpec provides inspection and testing services.[16] In a press release dated September 15, 2016, AmSpec announced its commencement of inspection and testing services in Mobile, Alabama and neighboring areas.[17]

9. The Departed Employees represented 43.75% of the headcount at Saybolt's Saraland Location based upon a headcount of 16 employees in August 2016[18] (*i.e.* 7 / 16 = 43.75%).

10. More importantly, I understand the Departed Employees were key to the operation of the Saraland Location and Saybolt's relationship with Chevron. Specifically, Hugh Freeman was the location manager and highest-ranking employee at the Saraland Location.[19] Travis Stair was the scheduler at the Saraland Location who was dedicated to the Chevron work because it represented the majority of Saybolt's work at this location.[20] The three inspectors and two lab technicians were all likewise working mostly on Chevron projects; these

---

[16] http://www.amspecllc.com/
[17] Exhibit D attached to Plaintiffs' Original Complaint, Application for *Ex Parte* Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and Request for Disclosure filed October 7, 2016
[18] SAY01418
[19] Plaintiffs' Original Complaint, Application for *Ex Parte* Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and Request for Disclosure filed October 7, 2016, paragraph 24
[20] Plaintiffs' Original Complaint, Application for *Ex Parte* Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and Request for Disclosure filed October 7, 2016, paragraph 24

employees were key to servicing Chevron at the Saraland Location.[21] Chevron had vetted and trusted these employees; qualifying new employees represents a significant barrier to obtaining Chevron work.[22]

11. Bobby Davenport also had a close relationship with Chevron as he had worked at Chevron's Pascagoula refinery for many years prior to joining Saybolt in 1997.[23, 24]

12. I see each of the Departed Employees and Bobby Davenport had signed employee agreements as required by Saybolt. These employee agreements included a two-year non-interference clause following the end of employment. For each of the Departed Employees, the two-year period started from the time they left Saybolt or September 2016. As of September 2016, Bobby Davenport was still within the two-year period of his employee agreement as he had retired from Saybolt in June 2015.

> For a period of two years after termination of my employment, I agree not to solicit, hire, or endeavor to entice away any employees of the Company, or knowingly interfere with the business relationship between the Company and any customer or other person, company or organization.[25]

13. I understand for the purpose of my work this provision means the employees were not allowed to willfully interfere with Saybolt's relationship with Chevron as they did, moving as a group from Saybolt to AmSpec and deliberately seeking to take the Chevron work with them to AmSpec. I am not offering a legal opinion, this will be a determination the court will make itself or assign to the jury before or during trial.

14. The revenue of Saybolt's Saraland Location decreased significantly following the departure of the Departed Employees, as shown in the graph below.[26]

---

[21] Plaintiffs' Original Complaint, Application for *Ex Parte* Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and Request for Disclosure filed October 7, 2016, paragraph 24
[22] Conversations with James Cowan and Roberto Ramirez
[23] Plaintiffs' Original Complaint, Application for *Ex Parte* Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and Request for Disclosure filed October 7, 2016, paragraph 22
[24] SAYBOLT (AMSPEC) 001370
[25] Paragraph 10 of Employee Agreements with Bobby Davenport, Hugh Freeman, Travis Stair (Exhibits A, B, C attached to Plaintiffs' Original Complaint, Application for *Ex Parte* Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and Request for Disclosure filed October 7, 2016), Gary Lynch (SAY00017-18), Patrick Perry (SAY00023-24), Jordan Sellers (SAY00028-29), Jimmy Driskell (SAY00007-08), Keke Hoang (SAY00012-13)
[26] SAY01419 (2015), SAY01417 (2016), SAY01429 (YTD 3/2017)



15. As shown in the graph below, Saybolt's revenue at its Saraland Location was stable to increasing in the years preceding the departure of the Departed Employees.[27]



---

[27] SAY01427 (2012), SAY01425 (2013), SAY01422 (2014), SAY01419 (2015), SAY01417 (2016), SAY01429 (YTD 3/2017)

16. Saybolt revenue had correlated to Chevron refinery volumes at Pascagoula.[28]



**Revenue of Saybolt-Saraland,AL-Insp&Lab vs. Chevron Pascagoula Refinery Inputs**

* 2016 Saybolt trade revenue equals YTD 8/2016 revenues annualized.

### *Opinions*

17. For purposes of this preliminary report, I have calculated Saybolt's lost profits following the departure of the Departed Employees (*i.e.* September 2016 through August 2018) resulting from the failure by the Departed Employees and Bobby Davenport to abide by the two-year non-interference provision in their employee agreement and the participation of AmSpec with the employees' failure to abide. I have not considered the continued effect beyond the two-year period at this time. I use the two year period because it is the duration of the non-interference provision to my understanding.

18. Damages should be connected to the wrongful act when a CPA is calculating losses. Although the defendant's acts need not be the sole cause of the plaintiff's lost profits, they must be a significant or material factor in the case of that loss.[29] Damages for lost profits are recoverable only if the breach or wrongful act by the defendant was the proximate cause of the loss. Proximate cause is an act from which an injury results as a natural, direct, uninterrupted consequence and without which the injury would not have occurred. In other words, there must be a link between the wrongful act and the resulting damages.[30] The CPA calculating lost profits should also be aware of the distinction between the legal requirement

---

[28] Chevron Pascagoula refinery inputs per Form 10-Ks of Chevron Corporation for 2014-2016.
[29] *Calculating Lost Profits*, AICPA Practice Aid 06-4, page 19, ¶45
[30] *Calculating Lost Profits*, AICPA Practice Aid 06-4, page 19, ¶39

of causation and the proof of the amount of damages. In order to recover damages for lost profits, it is necessary to show that the damages were proximately caused by the wrongful conduct of the defendant.[31] Although other factors may also be partially responsible for the plaintiff's lost profits, in some cases, it may not be practical, or possible, to eliminate the effect of all other possible causes of loss. However, it is necessary to show that these other factors have been considered and, to the extent possible, have been taken into account.[32]

19. I considered proximate cause for the purpose of my opinions and determined:[33]

   a) AmSpec was not in this market so it did not have local customer relationships except through the employees subject to agreements with Saybolt.

   b) With assistance from Bobby Davenport, AmSpec obtained the Saybolt employees as a group needed to perform the Chevron work.

   c) The Departed Employees had Chevron training and approval which represents a barrier to new employees.

   d) These employees are key to servicing Chevron in the local market.

   e) These employees enabled AmSpec to immediately transfer Chevron business from Saybolt.

   f) Because key employees left, other customers were lost as well.

   g) The Saraland Location was an established office. The Chevron work was stable to increasing with regard to Saybolt and the activity at Chevron supports continued stable to increasing business.

20. Lost profits are calculated as the net profits that would have been earned but-for the wrongful act ("But For") less the net profits actually earned ("Actual").[34]

*"But For" Profitability*

21. For the twelve months preceding the departure of the Departed Employees (*i.e.* September 2015 through August 2016), Saybolt's Saraland Location averaged $41,445 in adjusted net profits as shown in Exhibit A. For purposes of this calculation, I have adjusted costs to exclude allocations of expenses for corporate overhead and depreciation in arriving at this figure.

---

[31] *Calculating Lost Profits*, AICPA Practice Aid 06-4, page 19, ¶43
[32] *Calculating Lost Profits*, AICPA Practice Aid 06-4, page 20, ¶46
[33] See for example SAYBOLT (AMSPEC) 001369-71 and 000006-7.
[34] *Calculating Lost Profits*, AICPA Practice Aid 06-4, page 3, ¶4

Confidential

*Preliminary Expert Report of Jeffrey A. Compton*                    *May 19, 2017*



22. Based upon the past twelve month historical average net profit, the Saraland Location should have continued to generate $41,445 of net profits each month but for the actions of the Departed Employees, Bobby Davenport and AmSpec's involvement, as shown in Exhibits B and C (row A). Based on my conversation with James Cowan at Saybolt, there is no reason to believe that Saybolt would have lost the Chevron business and related non-Chevron business had the Departed Employees not left.

*Actual Profitability*

23. I have been provided the actual results of Saybolt's Saraland Location through March 2017. For the period of September 2016 through March 2017 (*i.e.* the first 7 months in the two-year loss period), I adjust the actual costs to exclude expenses for corporate overhead allocations, nonrecurring costs,[35] and depreciation, as detailed in Exhibit A.

24. I use two different actual outcomes to estimate losses.

25. First, on Exhibit B, I show that Saybolt has incurred relatively higher expenditures than historically which I understand relates to Saybolt's efforts to regain lost business.[36] This represents efforts by Saybolt to mitigate the loss caused by seven employees moving in a coordinated effort to transfer the Chevron and related non-Chevron business. If successful,

---

[35] Legal fees, outside consulting service expense, and workers' compensation.
[36] Conversation with James Cowan

this mitigation will reduce the difference between "but for" and actual to $0 by September 2018 (*i.e.* the month following the end of the two-year non-interference period or August 2018). I use actual reported losses (as adjusted as discussed in paragraph 23) for the period through March 2017. The April 2017 through August 2018 losses are ratably mitigated such that no loss exists by September 2018, where April 2017 losses are based upon the average of October 2016 through March 2017.

26. Second, on Exhibit C, I have also considered that sometime after June 1, 2017, Saybolt hypothetically may close its Saraland Location as a way to test the mitigation calculation in Exhibit B. This approach produces no losses after June 1, 2017 as to actual results alone before consideration of wind down expenses and damage to Saybolt's reputation from quitting a market area. I estimate April 2017 and May 2017 losses based upon the average of October 2016 through March 2017.

*Loss*

27. I subtract the actual net profits (loss) from the but-for net profits to arrive at the undiscounted lost profits as shown in Exhibits B and C.

28. I discount the future lost profits to February 28, 2018[37] using an 8.21% discount rate for purposes of this preliminary opinion.[38] I am continuing to analyze what adjustments, if any, may be necessary to adjust Core Laboratories N.V.'s weighted average cost of capital to that of its subsidiary Saybolt and more particularly Saybolt's Saraland Location.

29. Based upon my preliminary analysis, Saybolt has suffered lost profits of $1,286,080 (Exhibit B) or $1,276,750 (Exhibit C) for the two-year period following the departure of the Departed Employees (*i.e.* September 2016 through August 2018) resulting from the failure by the Departed Employees and Bobby Davenport to abide by the two-year non-interference provision in their employee agreement and the participation of AmSpec with the employees' failure to abide. I have not considered the continued effect beyond the two-year period at this time. As discovery develops, I may calculate the defendant's gains from the events described in this lawsuit.


In performing my work in this case, I have reviewed the documents shown on Exhibit D.

Additional bases for my opinions may exist beyond those specifically described in this report. I continue to review documents and testimony provided in this case. I reserve the right to amend

---

[37] I understand the trial is currently scheduled for March 2018. I will revise the date as of which I discount the future lost profits if the trial date is extended.
[38] Per Core Laboratories 2016 Annual Report, Table 4.

and supplement these opinions and exhibit details as additional information becomes available as well as this court's rulings or findings.

In preparing these opinions, I have used my professional skills, training and experience.

My firm is being compensated for our work on this case at our standard rates of $100 to $490 per hour. My firm's compensation is not dependent upon our opinions.

Signed,

Jeffrey A. Compton
Compton & Wendler, P.C.

# Summary of Professional Experience
# Jeffrey A. Compton

## Education

Rice University, B. A. Degree 1977 with majors in Economics and English
University of Houston, post-baccalaureate courses in accounting 1977-78

## Professional Status

Passed C.P.A. examination November, 1978
Certified Public Accountant licensed in Texas since 1980
Certified Fraud Examiner since 1991
Certificate of Educational Achievement - Business Valuation
Accredited in Business Valuation - American Institute of CPA's

## Professional Affiliations

American Institute of Certified Public Accountants -
     Forensic, Valuation and Litigation Services Section
Texas Society of Certified Public Accountants
     Chairman, Continuing Education Committee - Advisory Service Curriculum - TSCPA
     1995-1997
     Member, Management Consulting Services Standards Committee - TSCPA
     1996-1997
Association of Certified Fraud Examiners

## Employment

1991 - Current
Practicing public accounting as Compton & Wendler, P.C. with emphasis in investigative,
fiduciary, bankruptcy and litigation matters.

1986 - 1991
Practicing public accounting as Andersen, Compton & Ross with emphasis in investigative,
fiduciary, bankruptcy and litigation matters.

1982 - 1986
Practicing public accounting as a sole practitioner with emphasis in bankruptcy and investigative
matters.

1977 - 1982
Worked for Coastal Corporation and subsidiaries as well as Sparkman Energy Corporation
performing economic evaluations and Federal energy regulation compliance work.

Confidential

## TESTIMONY BY J. A. COMPTON DURING THE PAST
## FOUR YEARS BASED UPON AVAILABLE INFORMATION

Matheson Tri-Gas, Inc. vs. Maxim Integrated Products, Inc.; No. DC-12-00387, In the District Court of Dallas County, Texas 134th Judicial District. Lost profits. (Deposition) (Hearing)

Darrel L. Plants v. Valero Energy Corporation and Leroy Shine; In the 29th Judicial District Court for the Parish of St. Charles, State of Louisiana. Earning capacity of a refinery worker (Arbitration)

Daniel E. Supkis, Jr. M.D. v The Methodist Hospital; In the District Court Harris County, Texas 281st Judicial District. Lost Earnings (Deposition)

Royce Homes, LP; In the Southern District of Texas, Houston Division. Value of Assets (Hearing)

W&T Offshore, Inc. v. Apache Corporation, in the United States District Court for the Southern District of Texas, Houston Division. Oil & Gas Accounting Issues. (Deposition) (Trial)

Port of Corpus Christi Pilots' Rate Request (Hearing)

American Arbitration Association, Janet Mortenson, Special Receiver for Retirement Value v. Wells Fargo Bank, N.A., Wells Fargo Advisors, L.L.C., Wells Fargo Investments, L.L.C. and Whitney Giles. Lost profits (Arbitration Hearing)

Welsco, Inc. v. Mike Brace; In the United States District Court Eastern District of Arkansas Western Division. Lost Profits (Deposition)

Zhejiang Medicine Co., Ltd., and ZMC-USA L.L.C. v. Kaneka Corporation; In the United States District Court for the Southern District of Texas Houston Division. Reasonable royalty determination. (Deposition)

Valwood Green Joint Venture, McClendon #1-H Joint Venture, Beard #1-H Joint Venture, Foster #1, Joint Venture, Nelson #1-H Joint Venture, White #1 Joint Venture, Alfred Kennon#1-H Joint Venture, Mason #1-H Joint Venture, Mohon #1 Joint Venture v. Earthwise Energy Inc. v. Richard Albert, Alan Ashworth, Tom Brake, Carter Leasing and Investments, Ltd., David L. Carter IRA, David L. and Sharon Carter Charitable Flip Trust, David L. and Sharon Carter Net Income Trust, Ronald Carter Unitrust, Jeanna Carter Lewis Unitrust, George E. and Jean H. Collins Trust (Jean H. Collins, Trustee), Michael E. and Shirley Dalaska, Warren B. Depperman, Arthur Elson, Jonathon Bronic Gold, Howard Gray, Jr., Kerley Family Trust, Jerry R. and Nancy S. Powell Trust, R.P. Carter, inc., Skyline Corp, Inc., Tommy Revelle, Tom Rypma, Don I. Shimmon, Bryan Thompson, Ashby Toulmin, David W. Viers, Robert H. and Donna K. Wellington, Wellington Associates Profit Sharing Trust; In the 193rd Judicial District, Dallas County, Texas. Oil and gas accounting (Deposition) (Arbitration Hearing)

ProEnergy Services International, Inc. (USA), and Generadora Del Atlantico S.A. (Panama), Odinsa Holding, Inc. (British Virgin Islands), Grupo Odinsa S.A. (Colombia), Kevran S.A. E.S.P. (Colombia), Saturde S.A.S. (Colombia), Termotecnica Coindustrial, S.A. (Colombia), and I.C. Advisors & Projects, LLP (United Kingdom); International Chamber of Commerce International Court of Arbitration. Construction Accounting and lost profits. (Hearing)

Function One Consulting Group, L.L.C. v Accudata Systems, Inc., Richard Johnson and Patrick Vardeman; In the 113th Judicial District of Harris County, Texas. Lost profits from consulting agreement (Trial)

Filter Resources, Inc. v. George E. Rhymes, Jr. a/k/a Butch Rhymes and Rhymes Industrial Filtration & Consulting, LLC; In the 136th Judicial District Court of Jefferson County, Texas. Lost profits, trade secrets. (Deposition and Trial)

Beta Holdings, Inc., Beta International, Inc., Beta Holdings Holdco, LLC, Beta Acquisition I Co., Inc., and Beta Acquisition II Co., Inc. v. Robert J. Goldsmith and Rafael Ramos; In the Supreme Court of the State of New York County of New York. Valuation of a business. (Deposition)

William Beatty and Spray Hou, L.L.C. v. Jimmy Van Knighton, II a/k/a Jay V. Knighton, II individually, Thomas P. Stone, individually, Brenton Stanfield, individually, and Stone and Associates, LLP, N/K/A Knighton & Stone, PLLC; In the 133rd Judicial District Court of Harris County, Texas. Business valuation dispute. (Deposition)

Gatesco Q.M., Ltd. d/b/a Quail Meadows Apartments, A Texas Limited Partnership v. City of Houston; In the 133rd Judicial District Court of Harris County, Texas. Municipal accounting, relationship of costs to penalties charged. (Deposition)

Susan Dickerson, Ashley Felstein, and Autumn Pickens v Cellular Sales of Knoxville, Inc. and Cellular Sales of Indiana, LLC d/b/a Cellular Sales; In the American Arbitration Association. Employee overtime claims. (Deposition)

Tammy R. Morton, Individually and as Personal Representative of the Estate of Kenneth Dale Morton, Deceased, Theresa Morton, Individually and as Next Friend of Rebekah Ann Morton, a Minor, Toni Suzanne Bullock, Travis Morton and Preston L. Morton, Sr. V. Humble Surgical Hospital, LLC, Humble Surgical Hospital-Services, LLC, David L. Singleton, M.D.; In the 269th Judicial District Court of Harris County, Texas. Lost earnings of an individual. (Deposition)

Sand Storage, LLC v. Trican Well Service, L.P. and Trilib Management, LLC; In the United States District Court for the Southern District of Texas Corpus Christi Division. Lost profits storage of frac sand. (Deposition) (Trial)

John Durham v. The Stephens Group, LLC, Joe Vardell, Stephens JV, LLC, Ronald Clark, and Hunter Carpenter; In the 295th District Court of Harris County, Texas
Value of interest sold construction company (Deposition)

Quest Integrity USA, LLC v. Cokebusters USA Inc.; In the United States District Court for the District of Delaware. Patent Infringement. (Deposition)

Warren Wilder v. Titan Chemicals Corp. BHD. and Titan Petchem (M) SDN.
BHD., In the United States District Court for the Southern District of Texas, Houston Division.
Employment contract (Trial)

WBH Energy GP, LLC; In the United States Bankruptcy Court for the Western District of Texas, Austin Division - Castle Lake. Bankruptcy solvency and fraudulent transfer. (Deposition)

Cooper Industries, LTD. and Cooper US Inc. v. National Union Fire Insurance Company of Pittsburgh, PA; U.S. District Court for the Southern District of Texas, Houston Division. Fraud losses. (Deposition)

Estate of Robert Edward Pine, Deceased. In the County Court at Law, Number 4, Brazoria County, Texas. Estate Accounts. (Deposition)

Suncoast Post-Tension, Ltd v. Peter Scoppa, Sandeep N. Patel The Sterling Engineering Group of Companies, PT USA, and Others Unknown; In the United States District Court for the Southern District of Texas, Houston Division. Copyright and trade secret. (Deposition) (Trial)

J. Mike Amerson v. Williams Morgan, P.C., Danny L. Williams, Terry D. Morgan, and Rubendra S. Bains; In the 269th Judicial District Court of Harris County, Texas. Shareholder dispute. (Deposition)

Prospect Street Energy, LLC and Prospect Street Ventures I, LLC v. Energy Group Management, LLC Everest Energy Management, LLC, Dart Energy Corporation, and EE Group, LLC; American Arbitration Association. Fraud elements, economic losses. (Hearing).

ECS Telecom Services, L.L.C v Goodman Networks Incorporated v. Rockie Rish; In the 45th Judicial District of Bexar County, Texas. Breach of Contract. (Deposition)

International Training Services, Inc. d/b/a Well Control School v. Serious Labs Inc. and 3D Interactive Inc; In the 333rd Judicial District Court of Harris County, Texas. Software Development Costs (Deposition)

Russell B. Serafin v. Michael T. Gallagher; and The Gallagher Law Firm, L.L.P.; In the 55th District Court, Harris County, Texas. Shareholder dispute. (Deposition)

Enduring Resources II, LLC v. American Energy - Permian Basin, LLC; In the 80th Judicial Court, Harris County, Texas. Oil and Gas Accounting. (Deposition)

Midtown Park Development, Ltd., Paul T. Young and Horizon 2003, LLC; v Louis F. Goza; In the 212th Judicial District, Galveston County, Texas. Lost Profits of real estate development. (Deposition)

NGS Sub Corp., et al. v. Denbury Onshore LLC, in the District Court of Harris County, TX, 133rd Judicial District. Oil & Gas Accounting. (Deposition)

Sam Rayburn Municipal Power Agency vs. Ralph J. Gillis, et al; In the 253rd Judicial District Court of Liberty County, Texas. Losses from Power Supply Contract. (Deposition) (Trial)

Preferred Quality Chemicals, LLC v. SWEPI LP d/b/a Shell Western E&P, et al.; 111th Judicial District, Webb County, Texas. Oil & gas accounting issues. (Deposition)

Synergy Barukh, Ltd. v. 3S Services, LLC, 3S Team, LLC, Team Systems, Inc., August Linnartz, Jr., Robert Fudge, Joey Fudge, Mickey Staton, and Philip Levin; In the District Court 11th Judicial District of Harris County, TX. Post Closing Adjustments (Trial)

Compass Bank, in Its Capacity as Trustee of the San Juan Basin Royalty Trust v. Burlington Resources Oil & Gas Company LP and BROG GP LLC; In the State of New Mexico County of Santa Fe First Judicial District Court. Oil & Gas Accounting (Deposition)

Mike Weeks, Linda Weeks and Weeks Environmental, LLC v. Howard Kerry Garner in the 365th Judicial District of Dimmit County, Texas. Valuation of Oilfield Services. (Deposition)

Anixter, Inc. v. Wholesale Electric Supply Company of Houston, Inc. and Tommy McDonald; In the United States District Court for the Southern District of Texas, Houston Division. Lost Profits. (Deposition)

NU Resources, LLC v. Longwoods Resources, LLC; In the 270th Judicial District Harris County, Texas. Oil & Gas Accounting. (Deposition)

New Omega Investment Property, LLC v. Mike Nematpour, aka Mohammad Nematpour and Co/Max Realty, Inc. aka Co/Max Holding & Realty Co; In the District Court of Harris, Texas 190th District Court. Joint Expert for Parties to a Real Estate Investment. (Deposition)

Quest Integrity USA, LLC v. Clean Harbors Industrial Services, Inc.; In the District Court of Delaware. Reasonable Royalty and Lost Profits. (Deposition)

Quest Integrity USA, LLC v. Cokebusters USA, Inc.; In the District Court of Delaware. Reasonable Royalty and Lost Profits. (Deposition)

FarmAssure, LLC v MDOW Insurance Company and Columbia Lloyds Insurance Company v. Jeffrey Mann; American Arbitration Association. Lost Profit and Lost Business Value of an Insurance Agency. (Deposition) (Arbitration Hearing)

Kelsey-Seybold Medical Group, PLLC d/b/a Kelsey-Seybold Clinic v. Great-West Healthcare of Texas, Inc.; In the 234th District Court of Harris County, Texas. Lost Profits Arising from Health Insurance Claims. (Deposition)

Forum US, Inc. v. Jeffrey Musselwhite, Audie Romero, Michael Karbowski, Douglas Buendel, and Antelope Oil Tool & Mfg, Co., LLC; In the 295th Judicial District of Harris County, Texas. Lost Profits. (Deposition) (Trial)

In the Matter of the Marriage of William Edward Piske, Jr. and Jamie Krivan Lange; In the 246th Judicial District Court of Harris County, Texas. Valuation of a business, calculation of payments on a note based upon cash,flows. (Trial)

Tiger Valve Company, LLC, Plaintiff, vs. Canary, LLC, Defendant. Canary, LLC, and Canary Drilling Services, LLC, Counterclaimants, vs. Tiger Valve Company, LLC, Deming M. Gu, a/k/a Michael Gu, and Xin Gu, a/k/a James Gu, Counter-Defendants. In The United States District Court for the Southern District of Texas, Houston Division. Lost Profits (Deposition)

Saddle Creek Nurseries, LLC v. HHH Nurseries, LLC, Blake Hearnsberger, Individually, and Jason Hearnsberger, Individually. Purchase Price Dispute (Arbitration Hearing)

## PUBLICATIONS BY J. A. COMPTON DURING THE PAST TEN YEARS

*Avoiding Costly Post-Closing Accounting Disputes: Perspectives from a Forensic Accountant and a Litigator* by Jeff Compton, Joshua L. Fuchs, and Alexandra Wilde, Mergers & Acquisitions/Acquisitions & Disposals Conference, The Institute for Energy Law [with presentation by Compton and Fuchs on May 28, 2014]

*Avoiding These Accounting Expert Problems* by Jeff Compton and Laura Giese, Texas Lawyer, September 8, 2014

*How to Minimize Post-Closing Surprises* by Jeff Compton, Texas Lawyer, November 4, 2013

*Know How to Help Catch Fraud at the Firm* by Jeff Compton, Texas Lawyer, February 24, 2014

*Understanding Financial Statements* by Jeff Compton and Jeff Davidson, Texas Lawyer, May 5, 2014

*Six Ways to Translate a Trade Secrets Claim Into Specific Damages* by Jeff Compton and Lorene Rothschild, Texas Lawyer, January 12, 2015

*Discovering the Tax Return* by Jeff Compton and Allen Wendler, Texas Lawyer, March 9, 2015

*Discovering the Income Statement and Balance Sheet* by Jeff Compton, Texas Lawyer, July 15, 2015

*How to Determine the Value of Business Ownership Interest* by Jeff Compton, Texas Lawyer, September 28, 2015

*Discovering Cash Flow Statements* by Jeff Compton, Texas Lawyer, November 30, 2015

"Jindal v. SB International et al." by Jeff Compton and Sean Gorman, Presented at the Houston Chapter of Certified Fraud Examiners on January 12, 2016

*Goodwill: Corporate or Personal?* by Jeff Compton, Texas Lawyer, June 28, 2016

*Evaluating a Valuation* by Jeff Compton and Kennedell Amoo-Gottfried, Texas Lawyer, September 28, 2016

*Lost Profit Versus Lost Business Value* by Jeff Compton, Margaret Bryant and Michael Shapiro, Texas Lawyer, February 7, 2017

**EXHIBIT A**

Financial Results of Saybolt Saraland, AL for August 2015 through March 2017

*(In thousands of dollars)*

| | Per SAY01415 - SAY01421 | | | | | | | | | | | Per SAY01417 - SAY01418 | Per SAY01423 - SAY01430 | | | | | | | Subtotal Sep-15 -> Aug-16 | Subtotal Sep-16 -> Mar-17 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Sep-15 | Oct-15 | Nov-15 | Dec-15 | Jan-16 | Feb-16 | Mar-16 | Apr-16 | May-16 | Jun-16 | Jul-16 | Aug-16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 | Jan-17 | Feb-17 | Mar-17 | | | |
| | | | | | | | | | | | | | *Departed Employees Resigned in September 2016* | | | | | | | | | |
| **Revenue:** | | | | | | | | | | | | | | | | | | | | | | |
| Total Trade Revenue | 119.18 | 145.39 | 160.75 | 222.80 | 218.86 | 151.93 | 153.45 | 197.75 | 162.89 | 252.88 | 178.61 | 180.88 | 114.67 | 37.17 | 68.03 | 86.96 | 75.45 | 99.31 | 71.02 | 2,146.37 | 552.61 | A |
| **Costs:** | | | | | | | | | | | | | | | | | | | | | | |
| Total Cost of Sales | 116.29 | 134.21 | 135.74 | 165.88 | 191.71 | 137.28 | 188.33 | 150.30 | 170.35 | 135.93 | 134.15 | 175.50 | 187.05 | 125.59 | 257.13 | 248.95 | 208.73 | 217.20 | 163.33 | | | |
| Total General and Administrative | 20.00 | | | | 12.46 | 8.92 | 12.24 | 9.77 | 11.07 | 8.84 | 8.72 | 11.41 | 12.16 | 8.16 | 16.71 | 15.53 | 21.93 | 22.81 | 17.15 | | | |
| | 136.29 | 134.21 | 135.74 | 165.88 | 204.17 | 146.20 | 200.57 | 160.07 | 181.42 | 144.77 | 142.87 | 186.91 | 199.21 | 133.75 | 273.84 | 254.48 | 230.65 | 240.01 | 180.48 | | | B1 |
| Adjustments (to be Deducted): | | | | | | | | | | | | | | | | | | | | | | |
| Field Overhead Local | | | | | 0.44 | 1.25 | 1.26 | 0.07 | 0.76 | 5.83 | (0.46) | 1.03 | 0.35 | 0.92 | 1.75 | (1.10) | 0.13 | 1.28 | 0.48 | | | |
| Field Overhead Global | | | | | 20.49 | 14.57 | 20.04 | 16.10 | 18.17 | 13.94 | 14.42 | 18.69 | 20.00 | 13.36 | 27.36 | 25.72 | 17.22 | 17.83 | 13.45 | | | |
| Corporate G&A Allocation | | | | | 12.46 | 8.92 | 12.24 | 9.77 | 11.07 | 8.84 | 8.72 | 11.41 | 12.16 | 8.16 | 16.71 | 15.53 | 21.93 | 22.81 | 17.15 | | | |
| Legal Fees | | | | | | | | | | | | | | 15.91 | 109.06 | 82.70 | 30.15 | 5.81 | 7.70 | | | |
| Outside Consulting Service Expense | | | | | | | | | | | | | 5.29 | | | | | | | | | |
| Workers' Compensation | | | | | | | | | | | | | 63.51 | | | | | | | | | |
| Depreciation - Operating Fixed Asset | 5.16 | 5.16 | 5.16 | 5.16 | 5.16 | 5.16 | 4.83 | 4.83 | 4.83 | 4.83 | 4.83 | 4.83 | 4.83 | 7.83 | 7.09 | 7.09 | 6.16 | 6.36 | 6.36 | | | |
| Subtotal of Adjustments | 5.16 | 5.16 | 5.16 | 5.16 | 38.55 | 29.90 | 38.37 | 30.77 | 34.83 | 33.44 | 27.51 | 35.96 | 101.79 | 46.18 | 161.97 | 129.94 | 97.82 | 117.60 | 59.30 | | | B2 |
| Total Costs As Adjusted | 131.03 | 129.05 | 130.58 | 160.72 | 165.62 | 116.30 | 162.20 | 129.30 | 146.59 | 111.33 | 115.36 | 150.95 | 97.42 | 87.57 | 111.87 | 124.54 | 132.83 | 122.41 | 121.18 | 1,649.03 | 797.82 | B = B1 - B2 |
| **Net:** | | | | | | | | | | | | | | | | | | | | | | |
| Adjusted Net | (11.85) | 16.34 | 30.17 | 62.08 | 53.24 | 35.63 | (8.75) | 68.45 | 16.30 | 141.55 | 63.35 | 29.93 | 17.25 | (50.40) | (43.84) | (37.58) | (57.38) | (23.10) | (50.16) | 497.34 | (245.21) | C = A - B |

Averages:

| | *12 Months* Sep-15->Aug-16 | Oct-16->Mar-17 | Change |
|---|---|---|---|
| Revenue | 178.86 | 72.99 | 105.87 |
| Costs (As Adjusted) | 137.42 | 116.73 | 20.69 |
| Net | 41.45 | (43.74) | 85.19 |

Confidential

EXHIBIT B
Calculation of Lost Profits
For Two-Year Period of September 2016 through August 2018

(in thousands of dollars)

Confidential

| | Monthly Average Sep-16 → Aug-18 | 1 Sep-16 | 2 Oct-16 | 3 Nov-16 | 4 Dec-16 | 5 Jan-17 | 6 Feb-17 | 7 Mar-17 | 8 Apr-17 | 9 May-17 | 10 Jun-17 | 11 Jul-17 | 12 Aug-17 | 13 Sep-17 | 14 Oct-17 | 15 Nov-17 | 16 Dec-17 | 17 Jan-18 | 18 Feb-18 | 19 Mar-18 | 20 Apr-18 | 21 May-18 | 22 Jun-18 | 23 Jul-18 | 24 Aug-18 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Net Rev [1]** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Revenue | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | 179.86 | |
| Costs As Adjusted | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | |
| Adjusted Net | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | A |
| **Actual [2]** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Revenue | 179.86 | 114.67 | 37.17 | 62.03 | 66.56 | 75.45 | 99.51 | 71.02 | 72.99 | | | | | | | | | | | | | | | | | |
| Costs As Adjusted | 137.42 | 97.42 | 87.57 | 112.07 | 133.54 | 157.93 | 253.43 | 123.32 | 114.75 | | | | | | | | | | | | | | | | | |
| Adjusted Net | 41.45 | 17.25 | (50.40) | (41.04) | (37.34) | (57.34) | (123.13) | (50.16) | (40.74) | (41.76) | (13.72) | (26.71) | (23.70) | (12.69) | (13.84) | (11.65) | (6.37) | 1.36 | 6.37 | 11.96 | 16.09 | 21.60 | 26.41 | 31.42 | 36.43 | B |
| Lost Profits | | 24.20 | 91.85 | 85.29 | 79.80 | 84.83 | 64.50 | 51.51 | 65.18 | 86.58 | 75.17 | 79.16 | 65.14 | 68.13 | 55.12 | 56.11 | 63.10 | 68.00 | 35.08 | 38.89 | 22.26 | 13.48 | 18.62 | 3.61 | . | C = A - B |
| **F period** | | | | | | | | | | | | | | | | | | | | | | | | | | D |
| Discount Rate [3] | | | | | | | | | | | | | | | | | | | 0.21% | 0.21% | 0.21% | 0.21% | 0.21% | 0.21% | 0.21% | E |
| Present Value as of 7/29/2018 [4] | | 24.20 | 91.85 | 85.29 | 79.80 | 84.83 | 64.50 | 51.51 | 65.18 | 86.58 | 75.17 | 79.16 | 65.14 | 68.13 | 55.12 | 56.11 | 63.10 | 68.00 | 35.08 | 38.89 | 22.26 | 14.44 | 13.41 | 7.93 | 3.20 | F = C/(1+E)^D |

**Notes:**
[1] Based on monthly average of September 2015 through August 2016, as calculated in Exhibit A.
[2] Sep-16 through Mar-17 - Based on actual results as adjusted. See Exhibit A.
Apr-17 through Aug-18 - See discussion at §15 of preliminary report. April 2017 based upon monthly average of October 2016 through March 2017
[3] See discussion at §16 of preliminary report.
[4] Trial is currently scheduled for March 2018.

EXHIBIT C
Calculation of Lost Profits - Alternative
For Two-Year Period of September 2016 through August 2018

(in thousands of dollars)

| | Monthly Average Sep 15 + Aug 16 | Sep-16 | Oct-16 | Nov-16 | Dec-16 | Jan-17 | Feb-17 | Mar-17 | Apr-17 | May-17 | Jun-17 | Jul-17 | Aug-17 | Sep-17 | Oct-17 | Nov-17 | Dec-17 | Jan-18 | Feb-18 | Mar-18 | Apr-18 | May-18 | Jun-18 | Jul-18 | Aug-18 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | |
| **"But For" [1]** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Revenue | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | 178.86 | A |
| Costs As Adjusted | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | 137.42 | |
| Adjusted Net | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | |
| **Actual [2]** | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Revenue | | 114.67 | 37.17 | 64.03 | 86.96 | 75.45 | 99.21 | 73.02 | 72.99 | 72.99 | | | | | | | | | | | | | | | | B |
| Costs As Adjusted | | 97.42 | 87.57 | 113.87 | 124.54 | 132.84 | 122.41 | 121.16 | 115.73 | 116.73 | | | | | | | | | | | | | | | | |
| Adjusted Net | | 17.25 | (50.40) | (41.84) | (37.56) | (57.38) | (23.20) | (50.16) | (43.74) | (43.74) | | | | | | | | | | | | | | | | |
| **Lost Profits** | | 24.20 | 91.85 | 85.29 | 79.03 | 98.83 | 64.55 | 91.61 | 85.19 | 85.19 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | C = A - B |
| **Period** | | | | | | | | | | | | | | | | | | | | | | | | | | D |
| Discount Rate [3] | | | | | | | | | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | 8.33% | E |
| Present Value as of 12/24/2016 [4] | | 24.20 | 91.85 | 85.29 | 79.03 | 98.83 | 64.55 | 91.61 | 85.19 | 85.19 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 41.45 | 39.84 | 38.52 | 34.85 | 31.64 | 29.46 | 1,276.71 | | F = C / (1+E)^D |

Confidential

Notes:
[1] Based on monthly average of September 2015 through August 2016, as calculated in Exhibit A.
[2] Sep-16 through Mar-17. Based on actual results as adjusted. See Exhibit A.
     Apr-17 through Aug-18. Set discussion of 52% of preliminary report. April 2017 and May 2017 based upon monthly average of October 2016 through March 2017.
[3] See discussion at 52% of preliminary report.
[4] Trial is currently scheduled for March 2018.

# Exhibit D - Information Considered

- Answer and Defenses of Defendants, Bobby Davenport, Hugh Freeman and Travis Stair dated December 30, 2016
- Defendant AmSpec, LLC's Answer to Plaintiffs' Original Complaint dated December 9, 2016
- Defendant AmSpec, LLC's First Amended Counterclaim and Third Party Claim dated January 19, 2017 with Exhibit 1
- Defendant AmSpec, LLC's Initial Disclosures Under Rule 26(a)(1) dated January 27, 2017
- Defendant AmSpec, LLC's Responses and Objections to Plaintiff's First Set of Requests for Production dated February 17, 2017
- Defendant AmSpec's Objections and Responses to Plaintiff's First Set of Interrogatories dated February 17, 2017
- Defendant AmSpec's Objections and Responses to Plaintiff's Second Set of Interrogatories dated February 24, 2017
- Defendants Bobby Davenport, Hugh Freeman and Travis Stair's Rule 26(A) Initial Disclosures dated January 27, 2017
- Plaintiff's Objections and Answers to AmSpec, LLC's First Set of Interrogatories dated February 27, 2017
- Plaintiff's Objections and Responses to AmSpec, LLC's Requests for Production dated February 27, 2017
- Plaintiffs Objections and Answers to the Individual Defendants' First Set of Interrogatories dated February 27, 2017
- Plaintiffs' Answer to First Amended Counterclaim of AmSpec, LLC dated February 10, 2017
- Plaintiffs' Initial Disclosures dated January 27, 2017
- Plaintiffs' Objections and Responses to the Individual Defendants' Requests for Production of Documents dated February 27, 2017
- Plaintiffs' Original Complaint, Application for *Ex Parte* Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, and Request for Disclosure filed October 7, 2016 with Exhibits A – D and attached summons and cover sheet
- Responses of Defendant Bobby Davenport to Plaintiffs' First Set of Interrogatories dated February 27, 2017
- Responses of Defendant Bobby Davenport to Plaintiffs' Second Set of Interrogatories dated March 8, 2017
- Responses of Defendant Hugh Freeman to Plaintiffs' First Set of Interrogatories dated February 27, 2017
- Responses of Defendant Hugh Freeman to Plaintiffs' Second Set of Interrogatories dated March 8, 2017
- Responses of Defendant Travis Stair to Plaintiffs' First Set of Interrogatories dated February 27, 2017
- Responses of Defendant Travis Stair to Plaintiffs' Second Set of Interrogatories dated March 8, 2017

- Third-Party Defendant's Answer to First Amended Third-Party Claim of AmSpec, LLC dated February 10, 2017
- SAY00007-00008
- SAY00012-00013
- SAY00017-00018
- SAY00023-00024
- SAY00028-00029
- SAY00060-00097
- SAY00106-00130
- SAY01168-01172
- SAY01417-01430
- SAY01645-02483
- SAY02552-02556
- SAYBOLT (AMSPEC) 000001-001823
- 2016 Annual Report of Core Laboratories N.V.
- *Calculating Lost Profits*, AICPA Practice Aid 06-4
- Form 10-K of Core Laboratories N.V. for the Fiscal Year Ended December 31, 2016
- Form 10-Ks of Chevron Corporation for 2014-2016
- http://www.amspecllc.com/
- http://www.corelab.com/
- Conversations with James Cowan and Roberto Ramirez